Good morning. May it please the court, Phil Irwin appearing on behalf of the appellant Evans Creek, LLC. I'm going to do my best to reserve two minutes for rebuttal. I'll try to help you, but keep your eye on the clock, okay? Will do. This appeal emanates from the Reno City Council's denial of Evans Creek's annexation application in May 2020 concerning an approximately 1,000-acre parcel of land that is adjacent to southwest Reno, Nevada. Evans Creek brought two claims against the city, a Penn Central regulatory takings claim and an equal protection class of one claim. On the city's motion, the district court dismissed both claims. I will begin by addressing the elements of the takings claim before turning to the equal protection claim. And because this is an overlapping issue in the cases being argued today, I will start with the city's argument concerning ripeness. The district court ruled that the city's denial of annexation was a final decision, and we would submit that this issue isn't a particularly close call. Pactel merely requires that the city council reach a conclusive position, which is a relatively modest requirement. Here the city council conclusively denied Evans Creek's annexation application, and there is no mechanism by which Evans Creek can seek a variance or an exemption. And to be clear, this decision absolutely impacts the way the property can be used because the city exercises extraterritorial jurisdiction over the property, including all permitting authority. Council, let's say you're right about the ripeness issue. As I read it, the Nevada statute gives essentially whole, you know, open discretion to the governing body – I think in this case the city council – as to whether or not to annex. There's no obligation, and you have just a very low level standard of review here, just rational basis. What's your best argument that there was no rational basis for the city's decision in this case? Our best argument as to the rational basis, number one, well, first, as to discretion, I think our core argument – and this relates more to the Equal Protection Claim – is that the city council has only exercised its discretion in one direction while treating my client differently, and that is the Towery case. But with respect, I'm sure you're very familiar with local land use planning. This is local politics. It's the Raj politics that there is. And you can have a member of the city council that doesn't like your developer or whatever, and they don't approve it. But I don't know of any case – maybe you can show me one – that says that if they have treated another developer in another circumstance in a different way, that they're obligated to treat your client the same way. Is there such a case? Dealing with annexation? I'm not aware of one, no. Nor am I. But this isn't just a mixed bag of results where Evans Creek is pointing to one different developer who received more favorable treatment. In this case, it's every applicant who meets the Nevada Revised Statute requirements for seeking voluntary annexation and then qualifies under the Reno Municipal Code requirements. Here, the city staff recommended unconditional approval of the application, and in every other instance, the city council has granted that application. Hands down, we're the rational basis. We've alleged both that those bases that the city council cited for denying the annexation application are false, as well as pretextual. And we've laid out a long history talking about local politics. This property has been a flashpoint in the city of Reno for decades. With respect, isn't that in and of itself, though, testimony that this is a local political issue? You've got a local city council that has a lot of discretion on what it does. It has been a flashpoint. If I recall the record, about 600, well, roughly 60% of the property has been within the, if you will, the zoning umbrella of the city, and the rest is in the county. But this has been a flashpoint for a long time. Why do you have a special entitlement, if you will, that requires the city to overlook these years of controversy and suddenly say this is okay? Well, the property sits within the city's sphere of influence, which by law is an area into which the city plans to expand. And because of that, it exercises all authority. But only part of it, isn't that right? It's not the whole thing. It is part of it. Originally, yes, but now that is different. Now the entire property is in the sphere of influence. Okay, and how long has that been true? When the property was purchased in the 90s, part of the property was in the sphere of influence, and then the remainder was put into the sphere of influence in the 2000s. Okay, again, this is a big record, but is it Washoe County? Is that correct? What's the name of the county? Washoe County. Okay. Washoe County, as I understand it, has basically opposed the annexation. They wanted to be able to zone. They wanted to be able to control it. Is that correct? Well, originally, Washoe County was trying to essentially take the property, and that resulted in the litigation that resolved in 2006 with a settlement where Washoe County paid millions of dollars, $13.5 million to my client, and agreed not to oppose any annexation. Development or anything like that. So as far as the annexation, Washoe County is out. They're done. Correct. So this is solely a city issue because my client went into the city's sphere of influence as well as the service area. So where the property sits now is essentially a limbo state where to do anything on the property, such as build an eight-foot cinder block wall around the property to prevent trespassing. Under Reno municipal code, that requires a permit. My client can't receive that permit because the property hasn't been annexed. But doesn't all this go towards a reasonable expectation of investment-backed expectation? The whole issue of discretion means that it's only your client who has the unilateral belief that this is a good investment. Well, when my client purchased the property in the 90s for over $8 million, I think, which is evidence of the expectations that he had when he purchased the property, all of the properties that border the land are developed. But what do you do with the language in Penn Central that you can't establish a taking simply by showing that you have been denied the ability to exploit a property interest that you heretofore had believed was available for development? I think Penn Central presented a different circumstance where you're dealing with Grand Central Station where there is a use for the property. Here, my client can't do anything with the property. There's no feasible economic use for it. He can't develop. He can't do anything because he's essentially being held hostage by the city because he is in the sphere of influence and subject to extraterritorial jurisdiction, but can't receive a permit because he hasn't been annexed. And all parties recognize that annexation is the first step to development. But he's only sought a permit for this managed development. He hasn't sought a permit for five residences on the property. Well, he hasn't sought a permit at all because to do that, he would have to be annexed. And that was expressly told to him by the city staff in 2014. That's in our complaint. And then it was noted again in the city staff's unconditional recommendation that the annexation application be approved. It states again, this property is subject to the permitting authority of the city of Reno. You're saying that they can't do... I know they can't develop the subdivision that you have in mind, but they can't graze. They can't graze animals there. They can't do, you know, overland buggies or whatever. Mountain bike trails. Yeah, any of that sort of thing. As a mountain biker, I would say economically feasible commercial uses. I don't know if the mountain bike trails would get there. But they could. Potentially. My client has explored other uses for the property, agricultural uses. The city likes to point out that there is cattle on the property. There's about a dozen cows, and that is done solely to get the agricultural tax exemption. It is not profitable at all. And the property is not suited for any other use. I know in the Bridge, Hialeah case, there was a quote about the properties only get for growing rocks. This is somewhat similar. But as far as reasonable... You recall, though, they weren't successful. I do. And that case presented much different facts. And most importantly, that case also came to this court after a full trial on the merits, where the plaintiff had the opportunity to present evidence and expert testimony about value and reasonable investment-backed expectations. We're just trying to get in the door of the courthouse here. And this is a motion to dismiss on whether we have alleged a plausible claim. And that's the main thrust of our argument here is that the district court heightened that analysis. I take your point about the Penn Central issue. But do you want to deal with the equal protection aspect because you're getting down on time here? If you do, I'd be interested in knowing why you didn't take up the district court's, if you will, authorization to amend your complaint to make more allegations, plead more allegations about similarly situated comparators. Because the district court effectively rejected our theory of the case. The district court set forth a test where any similarly situated property would need to be identical in size, location, financial risk, and timing. And we don't believe that that's an appropriate test here where there's no evidence in the city council's history that it has ever considered any of those factors in denying an annexation application. Let me ask you this way. Do you agree that as presently pled that you do not plausibly state an equal protection argument that can be successful? Under the district court's analysis? No, no, just under the law. We do believe that we have pled a viable claim. Even without amending the complaint to talk about a better comparator? Our position is that we shouldn't have to identify other comparators that meet the district court's standards because this is every other annexation applicant in one bucket and my client being singled out. I would compare it more to the Gerhardt case where this court found that that evidence was strong evidence that the plaintiff there had been singled out. We've also cited cases where dealing with applications, which is kind of the lens through which we view our claim, where all the qualified applicants get approved except for one. We believe we fall into that and the comparators in this case should be applicants for annexation who meet the qualifications under the Nevada Revised Statute as well as the Renewal Municipal Code, which we indisputably did here as evidenced by the city staff recommendation that we be approved. Did the Smile Direct Club impact your argument? Can you say that again? The 9th Circuit case in Smile Direct Club, it came after the briefing. I don't know if you're familiar with it. I am not familiar with it to the point where I can discuss it here. Do you want to save your rebuttal time? It's up to you. Yes, I will reserve the rest of my time for rebuttal. Thank you. Very well. All right. Did you say this Metta? Is that correct? Ms. Metta? That is correct. Thank you, Your Honor. Proceed on behalf of the city. Thank you. Jasmine Metta with the Reno City Attorney's Office for the record, representing the City of Reno. The District Court appropriately dismissed this case on our motion to dismiss for three reasons. First, there was no taking. The property was previously denied annexation in 2003 and there's been no status change since. This 2020 decision merely preserved the status quo and defendant hasn't pleaded plausibly any economic impact either before the 2020 taking or as a result of the 2020 taking as the District Court recognized. Second, they failed to plausibly plead an equal protection claim, especially in light of the Smile Direct Club v. Tippins case, which expressly clarified that the plaintiff has to plead that the comparator is in all material aspects the same as the plaintiff. In other words, they have to be prima facie identical. What the plaintiff here says is any person who brought an annexation application before the City Council is the same as they are, which is simply not true. An annexation application for an existing McDonald's, for example, is vastly different from an annexation application for over 1,000 acres in a very topographically challenged area that the City would then have to provide police and fire services to. So, from your perspective, I gather you would argue that their current equal protection pleading just doesn't make it because there is no comparator that is substantially identical and without that it can't possibly succeed. That is correct, Your Honor. I would submit that they have not pleaded adequately. They haven't identified even one comparator that is similar to them in all material respects. And that is fatal to their cause of action on the equal protection claim. And as noted, as the Court has noted, the District Court gave them leave to amend, but they have chosen to stand on their complaint as is. And your third point? Third goes into what I was just talking about, which is that the District Court gave them leave to amend. And they decided not to take the District Court up on that opportunity. And I would note... Go ahead. I would note that the District Court pretty clearly stated what kind of factual allegations would survive a motion to dismiss and gave them a pretty clear road map in the dismissal order. Do you agree that the denial of annexation was a final decision in the context of taking slot? I would argue that it is not in this case for a couple of reasons. First, there's been a recent case in the Tenth Circuit that recognized the U.S. Supreme Court's ruling in Pactel. The case is Mill Creek Street versus... versus the City of Aspen. And in that case, the City of Aspen removed from the zoning the ability to build free market units. The applicant sought rezoning for a mixed-use zone, and the City of Aspen denied it. The Tenth Circuit said... Go ahead. The Tenth Circuit said you have the opportunity to bring a planned unit development, which could have the free market units that you want. And the ripeness issue is not... It is constitutionally ripe, but from a prudential standpoint, it is not ripe. We haven't brought a development plan that could be approved. So what remedies do you see that the plaintiffs have right now? They could... I mean, not being annexed does not preclude them from bringing a development application. It would have to be analyzed in light of whatever development application that is, in light of the relevant factors in the master plan, but they could still bring a development application. The other point is they could ask for the City to remove them from their SOI, to sponsor that application to the Regional Planning Commission, or they could just go directly to the Regional Planning Commission and ask to be removed from the City's sphere of influence. Okay, thank you. But I do want to be clear that they are not prohibited from bringing a development application or an application for a building permit, even though they're not annexed. To the City or the County? To the City. So you say that the denial of the 2020 application does not constitute a final decision. Is that right? Constitutionally, I would argue that it is ripe, but prudentially, no. I know you're citing that City of Aspen case from the 10th Circuit, but, you know, when they say they want to develop this subdivision, then you say, no, we're not doing it. And they've done everything they can within the City, I assume, to appeal within the City, and they're not getting anywhere. Isn't that final prudentially as well, under 9th Circuit law? I agree with you, Your Honor, that that would be, but that's not the case here. They've never submitted a development application that actually went to a vote in front of City Council. So basically, that's the biggest problem, is that this is all theoretical. They really haven't submitted an application, so they can't possibly be final. Is that right? That's correct. That's our position. So, returning to the taking argument, you know, it's important to recognize that this isn't, this isn't an exaction under Nolen-Dolan. This is not a total economic inability to use their property, economically, under Lucas. They've conceded that. They are proceeding under Penn Central. And they also concede that they currently operate the property for agricultural use in order to get the tax exemption. They still have uses available to them. Excuse me, under Penn Central, you know, there, of course, the Supreme Court analyzed what they could do in terms of air rights and the like. Is the agricultural use of the property somewhat analogous in this case, in that this is what they've been using it for for a long time? They may have some investment expectations, which may or may not be realistic, but what they've been doing before, they still do. Is that correct? That is correct, Your Honor. They absolutely can operate the property for agricultural use as they've been doing and as their predecessor and interest did. So under Penn Central, from your perspective, they don't meet maybe even two of the three requirements. Is that fair to say? Yes. We would assert that they don't meet the economic impact prong nor the reasonable investment backed expectations prong. And they, moving into the reasonable investment backed expectations, even their complaint says that before they even acquired the property, so they acquired the property in 1998. In 1997, they brought an application to be brought within the city's sphere of influence and they withdrew that application because of community opposition. So even before they actually acquired the property, they were faced with opposition to them coming into the city's boundaries. But more importantly, I would argue that the decision not to include them in the city's boundaries does not change the status of the property. It's not a physical invasion. It does not preclude them from using the property as they've always used it. And the status simply hasn't changed. So there is no taking of the property. The city hasn't appropriated it for its own use. The city, you know, the plaintiff still has the right to exclude. It was private property before and it remains private property. There's simply no taking as alleged here. I gather your argument is that if they've got a NIMBY problem, that's not a constitutional taking. That is correct, Your Honor. I would agree with that. As a practical matter, if they can't get city services, they can't develop the property, correct? The development would depend on what kind of development they want, whether they could obtain city services. So, for example, you know, they could bring in a parcel map and subdivide the property maybe into large units, large ranchettes. But to say that they have no city services is not quite accurate. For example, the city has allowed connections to its sewer before where there's county property. They connect to the sewer, the city sewer, but then the treatment facility that it would go to ultimately would have to be the county's treatment facility instead of the city's treatment facility. What we can't do is provide fire or police services to an area that is not annexed into our city boundaries. Or water, right? Well, water is slightly different because they would have to annex separately into the Truckee Meadow Water Authority's service area. And that's not a decision that the city makes. That's a third party. And that's obviously a big deal in any of the western states right now. Is it not? That's correct. Water is critical for any development infrastructure. Going back to the investment-backed expectations, one of the arguments that Evans Creek has made is that you had to look at the property at the time of their acquisition, whether the expectation was reasonable. And the district court looked at the 25 years in between the acquisition in 1998 and the 2020 application for annexation. We submit that that was entirely appropriate. And that's supported by the Bridge Inalea decision where the court looked at the occurrences between the time that the party acquired the property, what it was, the conditions that it was supposed to fulfill, and then ultimately fail to fulfill when it was down-zoned by the commission in that case. It's entirely appropriate here for the court to look at the intervening years. And notably, the applicant alleges that they've brought four applications for annexation, but they withdrew two of those. Those never went to the city council. Only the 2003 application and the 2020 application actually made it to the city council. And that is reflective of what actually happens in annexation applications. If applicants don't feel like they may receive approval, oftentimes they'll just pull their application rather than take it to the city council. But based on their own application... Let me ask you this final question. As you know, your opposing council contends that the city's reasons for not permitting annexation are all pretextual. Do you have any comment about their claim that it's pretextual? Yes, Your Honor. So under the pretext argument, it has to be objectively false. And they've not contended that any of the reasons that city council asserted for denying the annexation application were objectively false. Or that they were actually motivated by an improper motive. And there they've said, well, they just want to keep it as open space. But the city council had valid reasons for not wanting to provide fire service to an area that is prone to wildfire and to be on the hook for that financially without having a master plan amendment in front of it to know what kind of development they were ultimately going to be looking at. And I think I'm out of time. Your time is up. Let me ask my colleagues whether either has additional questions for council for the city of Reno. All right. Thank you very much, counsel. Very helpful. Thank you. Mr. Irwin, you have some rebuttal time. Thank you, Your Honor. I'll start with the pretext issue since that's where we ended. The law is false or pretextual, not both. We've alleged both. And this is a motion to dismiss where our allegations are taken as true. Let's go back to that a little bit. Do you disagree that objective falsehood is the standard? Do you have to show that something is objectively false in order to prove? Pretext in this context? I don't agree that you have to show it's objectively false to prove pretext. I believe the law is false or pretextual. It's dual. And what's the standard for pretextual by your light? That it's motivated by ill intent. Do you have any proof or allegations of that by individual council people? I have factual evidence, but we're here on a motion to dismiss. I mean, is there anything in the complaint that says Councilman X hates us? And this is some evidence of that. Is there anything like that? We've alleged that the city council wants to keep this land as open space so Reno residents can use it as a park. And that is exactly what's happening. It's not a nimby. Let me know what's happening. Is there anything in your complaint that says that? We have alleged that that is the city council's true intention is to keep this open for parkland. If I got to summary judgment or a trial after the discovery we have conducted, yes, I could make that showing. But this is a motion to dismiss where we're coming in on the front end. And that's the problem is we're dealing with factual arguments before we had the chance to conduct discovery. Again, you've got the plausibility of the Iqbal Twombly issue. Take what Council just said. There's apparently a very high incidence of fire in that area. The city council apparently doesn't want to incur the high cost of having to put out fires in that area. And they don't think it's smart to let this subdivision go forward. What's wrong with that? I would submit that fire is a danger everywhere in the western United States. And that applies to every other applicant for annexation. Maybe we shouldn't have as many things built in fire prone areas. We've got that in California, too, as a matter of fact. I'm aware. But the fire marshal testified at the city council hearing that this was a logical extension of the city services. There's no issue. Yes, it's in a high fire zone. That just means that they need to comply with certain statutes on what is built there. It doesn't mean you can't build there at all. Okay. Sadly, your time is up. But let me ask my colleague whether either has additional questions. I know you would have a lot more to say, but we have a time limit. So we thank you very much for your argument. The case just argued is submitted.
judges: THOMAS, SMITH, McShane